**CLYDE H. SIMPSON, as Tax Collector of Duval County, Florida, et al., v. R. L. BOHON, et al.**

31 So. (2nd) 406                              June Term, 1947
July 11, 1947                                      En Banc
Rehearing denied July 31, 1947

*William M. Madison, O. O. McCollum, Jr.,* and *J. Henry Blount,* for appellants.

*Edgard W. Waybright, Sr., Roger J. Waybright* and *Waybright & Waybright,* for appellees.

ADAMS, J.:

R. L. Bohon, et al., as trustees, brought suit to cancel certain city and county tax certificates for taxes levied in 1943, 1944 and 1945 against Lot 1, Block 33, Hart's Map of the City of Jacksonville. Prior to 1943, the Elks Club, Inc., a nonprofit corporation, owned the property and held the legal title to same. On December 31, 1942, the corporation transferred the legal title to Bohon and others, as trustees, for the admitted purpose of completely exempting it from taxes. The trustees are the board of directors of the corporation and

will continue to be the same. The corporation reserved full power to revoke the trust, dominate the management and use of the property as well as receive all the net income.

Answers were filed showing that these certificates represented taxes levied against that part of the property used for commercial and nonexempt purposes under the law. An agreed statement of facts was filed, which is as follows:

"Complainants and defendants hereby stipulate that the following facts, in issue in this cause, are true, and that final decree should be entered herein by the Court on the pleadings and this stipulation:

"1. That prior to January 1, 1943, Elks Club, Inc., a corporation not for profit, held the legal title to the real property situate in Duval County, Florida, known and described as

"Lot One (1) Block Thirty-three
"(33), Hart's Map of Jacksonville.

"That as shown in its charter filed among the public records of Duval County, Florida, the members of said Elks Club, Inc., are the members of Jacksonville Lodge No. 221, Benevolent and Protective Order of Elks, a fraternal order and said corporation is controlled by and used by said Lodge for the purpose of holding and managing its property.

"2. That upon December 31, 1942, for the purpose of avoiding taxes, the Trust Deed a copy of which is attached to the Bill of Complaint herein and marked Exhibit "A" was duly executed by said Elks Club, Inc., and recorded among the public records of Duval County, Florida, and the legal title to said real property remained in the Trustees named in said Deed and their successors as Trustees under said Trust Deed throughout the years 1943, 1944 and 1945.

"3. That all during the years 1943, 1944 and 1945, the Elks Building on said real property consisted of 3 stories and a basement, and was located at the northeast corner of Laura & Adams Streets, Jacksonville, Florida, and had an assessed valuation of $372,000.00.

"That the basement and ground floor, comprising 43.1% of the floor space of said building, was rented out for commercial purposes to 8 different tenants occupying 8 separate

store spaces, in which various businesses were conducted. During this three year period, the rentals received from said tenants amounted to about $85,188.00. Said rentals were disposed of by the Trustees as follows: about $25,645.00 for operation, maintenance and repair of the building; about $43,165.00 to pay off the mortgage on said property; about $11,005.00 in 1944 to pay 1941 and 1942 taxes; about $16,-650.00 invested in U. S. War Bonds. The $11,277.00 excess of disbursements over receipts from rents was met from cash on hand at the beginning of said period.

That the second and third floors of said building comprising 56.9% of the floor space of said building, was used by the members of said lodge as follows:

"The second floor of said building was used for a lounge room, and rest rooms for lodge members, the manager's office, and a store-room for bar supplies.

"The third floor of said building was used as follows: about 40% of the floor space for lodge room and anterooms and secretary's office, about 40% for billiard room and bar and recreation room, about 20% for kitchen and rest rooms.

"The lodge room and anterooms and Secretary's office are used for lodge meetings; the balance of the second and third floors are used for the social activities of the members of the lodge.

"Parts of the second and third floors were used for preparations in connection with the annual orphans' picnic of the lodge and the annual distribution of Christmas baskets to the needy, and by the lodge charity committee in connection with applications for contribution of lodge funds for the support of a lodge brother in the Elks National Home, and for contributions to organized charities.

"4. That all real estate taxes imposed upon said property for years prior to 1943 have been paid, Elks Club, Inc., having paid the taxes for 1941 and 1942, no taxes having been imposed upon said property prior to 1941 while said corporation not for profit owned same."

The chancellor felt compelled to hold the entire property exempt and cancel the certificates by reason of our opinions

in State ex rel. Cragor Co. v. Doss, 150 Fla. 486, 8 So. (2nd) 16 and Rogers v. City of Leesburg, 157 Fla. 784, 27 So. (2nd) 70, which construed Sec. 192.06 F.S.A., and Article IX, Sec. 1, Florida Constitution.

Appellants have sought to find no distinction in this case and the cited case but have confidently stated this decree must stand unless we recede from certain utterances made by us in those opinions. They have now suggested that we hold Sec. 192.06, F.S.A., unconstitutional in so far as it exempts benevolent and fraternal institutions inasmuch as Article IX, Section 1, Florida Constitution, granted no such power to the legislature. They have also suggested that we hold the legal title to be vested in the corporation because of the Statute of uses, Sec. 689.09, F.S.A., and that we then recede from our holding in the Rogers case, wherein we held that Section 16 of Article XIV, Florida Constitution, did not apply to nonprofit corporations. It is a common and well known rule that we will yield to neither of these suggestions unless it becomes necessary to do so in order to dispose of the case. We have come to the conclusion that this case may be distinguished from those and these certificates are valid.

The distinguishing feature of this case lies in the fact that these taxes were levied only against the property used commercially. In the Rogers case, supra, the entire property was claimed exempt whereas here the only taxes assessed are against the portion used for commercial purposes. This method of assessment was approved by us in State ex rel. Cragor Co. v. Doss, 150 Fla. 491, 8 So. (2nd) 17. The agreed facts here differ from those in the cases relied upon by the lower court. For the exemption to hold under the statute, the proceeds from the rented portion must also be used for some one of the named purposes. This part of the statute. (192.06, F.S.A.) reads::

"(3) . . . and the rents, issues and profits of said property are used for the educational, literary, benevolent, fraternal or charitable purposes of said institution."

We do not find it so here. According to the agreed statement of facts, over the period while these taxes were imposed,

more than $85,000.00 was collected in rentals. This was disbursed as follows: over $25,000 for operations, maintenance and repair of building; over $43,000 to pay off mortgage indebtedness on the property; $11,000 to pay 1941-42 taxes; the remainder, together with cash on hand, was used to purchase $16,650 in United States War Bonds. The stern fact is that not one dollar of this huge sum found its way into the charity fund. There is a vast and obvious difference in collecting money and paying it out in charities and that of creating a capital estate.

It has been held in Fitterer v. Crawford, 157 Mo. 51, 57 S.W. 532, 50 L.R.A. 191:

"A Masonic lodge building, the first two stories of which were rented, and the third used as a lodge hall, was not within the Const. Art. 10, Sec. 6, and Rev. St. 1889, Sec. 7504, exempting buildings in cities and towns from taxation when used exclusively for purposes purely charitable, notwithstanding the rents received went to pay a debt on the building." (Headnote.)

It was held in Senter et al., v. City of Tupelo, 136 Miss. 269, 101 So. 372.

"Where a building was owned by a Masonic Lodge, and a part of it is rented for stores and offices, and the proceeds derived from these rentals applied to the payment of the balance of purchase money due on the property, these revenues so derived from these rentals are not used for "fraternal and benevolent purposes' in accordance with section 4252, Code of 1906, (section 6883, Hemingway's Code), and the property is not, therefore, under this section exempt from taxation." (Headnote.)

See also Sir Walter Lodge No. 411, I.O.O.F. v. Swain, 217 N. C. 632, 9 S. E. Rep. (2nd) 365; Summunduwot Lodge No. 3 I.O.O.F. v. Speth, 81 Kan. 894, 106 Pac. 1077; Syracuse Masonic Temple, 270 N. Y. 8, 199 N. E. 780.

For the reasons given the decree is reversed with directions to dismiss the bill.

Reversed.

TERRELL, BUFORD, CHAPMAN and BARNS, JJ., and HOLT, Associate Justice, concur.

THOMAS, C. J., agrees to conclusion.

TERRELL, J., concurring specially:

I find no trouble in agreeing with the opinion as prepared by Mr. Justice ADAMS. I think it finds ample support in the agreed statement of facts filed with the pleadings, even though the case was presented here on a different theory.

I further find nothing in the briefs of counsel or the record to change or modify this court's opinion in State ex rel. Cragor v. Doss, 150 Fla. 486, 8 So. (2nd) 15, and Rogers v. City of Leesburg, 157 Fla. 784, 27 So. (2nd) 70, construing Section 192.06 F.S.A. and Section 16, Article XVI of the Constitution.

The interpretation of Section 16, Article XVI of the Constitution and the scope given it in Rogers v. City of Leesburg derives from its purpose as expressed to me by members of the constitutional Convention who were responsible for it. The interpretation so given is in harmony with and takes nothing from Section 1 of Article IX dealing with the power to tax.

I am also convinced that the interpretation given Section 192.06 F.S.A. in the last cited case was correct. The Constitution gives the Legislature some latitude in defining the sources and manner of taxation. I think it competent for the legislature to exempt the property of a fraternal institution when used for charitable purposes. This Court is not the sole guardian of the constitution. The members of the legislature take the same oath to support and protect it that we do. In errors of law we may correct it but not so in errors of judgment. The very condition in Section 192.06 for exempting the property of a fraternal institution, is that it is used for one of the grounds of exemption named in the constitution. The stipulation here shows that the property of appellees is not so used, hence my concurrence with the opinion of Mr. Justice ADAMS.

BUFORD, J., and HOLT, Associate Justice, concur.